**WALLACE, Secretary of Agriculture, v. SMITH et al.**

No. 278.

District Court, S. D. Texas, Brownsville Division.

July 19, 1935.

Douglas W. McGregor, U. S. Atty., of Houston, Tex., Mac Asbill, Sp. Asst. to Atty. Gen., and Seth Thomas, Sol., Department of Agriculture, H. Stewart McDonald, Jr., and Walter V. Schaefer, Department of Agriculture, all of Washington, D. C., for plaintiff.

Cameron, Hardin & Bridges, and A. W. Cameron, all of Edinburg, Texas, for defendants.

KENNERLY, District Judge.

The facts have been stipulated. Briefly, they are as follows:

Purporting to act under the Agricultural Adjustment Act of May 12, 1933, and amendments (chapter 26, § 601 et seq., title 7 USCA), the Secretary of Agriculture has, under subdivision 3 of section 8 of such act (subdivision 3, section 608, title 7 USCA), issued a so-called license which it is claimed applies to all processors, associations of producers, and others engaged in the orange and grapefruit business in Texas, and that they become licensees thereunder whether they do or do not consent thereto or acquiesce therein. Such license provides for the selection of, and there has been selected, a committee known as the Texas Citrus Control Committee, and such committee has:

(a) Fixed and defined eight grades of grapefruit (U. S. Fancy, U. S. No. 1, U. S. No. 1 Bright, U. S. No. 1 Russet, U. S. No. 2, U. S. Combination, U. S. No. 2 Bright, and U. S. No. 2 Russet), and has declared and ordered that no grapefruit not coming within such eight grades shall be shipped by any licensee.

(b) Provided for proration and the allotment to each licensee of the particular quantity of oranges and grapefruit which such licensee is permitted to ship, and prohibiting other shipments.

(c) Levied an assessment against all oranges and grapefruit shipped by licensees.

Defendants have been, and are, engaged in the business of buying, selling, shipping, etc., oranges, grapefruit, and other citrus fruits in the Rio Grande Valley in this district and division and, while such license was issued without the consent, application, or acquiescence of defendants, the Secretary of Agriculture and such Texas Citrus Control Committee have sought and are seeking to require defendants to operate their business in accordance with such license and such act of Congress and the rules and regulations promulgated thereunder. This defendants have refused, and are refusing, to do.

The Secretary of Agriculture therefore brings this suit against defendants, seeking to perpetually enjoin them:

From shipping, transporting, or marketing in any quantity whatever grapefruit

grown in Texas and not within the eight grades fixed and defined, and permitted to be shipped, by order of such Control Committee.

From shipping, transporting, or marketing in any quantity whatever oranges and grapefruit grown in Texas, unless and until defendants shall, in compliance with the order of said Control Committee, obtain an allotment or allotments therefor from such committee, and then only in compliance with the terms of such allotment.

From shipping, transporting, or marketing in any quantity whatever oranges or grapefruit grown in Texas, without paying the assessments on and against such shipments so levied by such Control Committee.

1. The particular provisions of the act under which plaintiff is seeking to so control defendants are as follows:

"§ 601. *Declaration of emergency.* The present acute economic emergency being in part the consequence of a severe and increasing disparity between the prices of agricultural and other commodities, which disparity has largely destroyed the purchasing power of farmers for industrial products, has broken down the orderly exchange of commodities, and has seriously impaired the agricultural assets supporting the national credit structure, it is hereby declared that these conditions in the basic industry of agriculture have affected transactions in agricultural commodities with a national public interest, have burdened and obstructed the normal currents of commerce in such commodities, and render imperative the immediate enactment of this chapter.

"§ 602. *Declaration of policy; establishment of base periods for prices.* It is hereby declared to be the policy of Congress—

"(1) To establish and maintain such balance between the production and consumption of agricultural commodities, and such marketing conditions therefor, as will reestablish prices to farmers at a level that will give agricultural commodities a purchasing power with respect to articles that farmers buy, equivalent to the purchasing power of agricultural commodities in the base period. The base period in the case of all agricultural commodities except tobacco shall be the prewar period, August 1909—July 1914. In the case of tobacco, the base period shall be the postwar period, August 1919—July 1929.

"(2) To approach such equality of purchasing power by gradual correction of the present inequalities therein at as rapid a rate as is deemed feasible in view of the current consumptive demand in domestic and foreign markets.

"(3) To protect the consumers' interest by readjusting farm production at such level as will not increase the percentage of the consumers' retail expenditures for agricultural commodities, or products derived therefrom, which is returned to the farmer, above the percentage which was returned to the farmer in the prewar period, August 1909—July 1914. * * *

"§ 608. *General powers of Secretary.* In order to effectuate (sic) the declared policy, the Secretary of Agriculture shall have power— * * *

"(3) Licensing processors; revocation of licenses; penalty for handling without license. To issue licenses permitting processors, associations of producers, and others to engage in the handling, in the current of interstate or foreign commerce, of any agricultural commodity or product thereof, or any competing commodity or product thereof. Such licenses shall be subject to such terms and conditions, not in conflict with existing Acts of Congress or regulations pursuant thereto, as may be necessary to eliminate unfair practices or charges that prevent or tend to prevent the effectuation of the declared policy and the restoration of normal economic conditions in the marketing of such commodities or products and the financing thereof. The Secretary of Agriculture may suspend or revoke any such license, after due notice and opportunity for hearing, for violations of the terms or conditions thereof. Any order of the Secretary suspending or revoking any such license shall be final if in accordance with law. Any such person engaged in such handling without a license as required by the Secretary under this section shall be subject to a fine of not more than $1,000 for each day during which the violation continues."

Defendants say that without laying down a policy or establishing standards, Congress has, by the quoted provisions of such act, conferred, or attempted to confer, upon the Secretary of Agriculture the duty and power to fix the terms and conditions of such license, and that such act is therefore, to that extent, constitutionally invalid, and that defendants' business may not be so controlled thereunder.

At the time of the hearing of plaintiff's application for preliminary injunction here-

in, defendants, standing upon the rule laid down in Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446, raised the same question, but preliminary injunction was denied upon other considerations. Since that time, the Supreme Court, in A. L. A. Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, in considering a similar act of Congress, has, with great clearness, again laid down the rule. I think what is said there is controlling here, and that such quoted provisions of such act are constitutionally invalid, and that plaintiff may not enforce same against defendants.

It is not necessary to determine the other questions raised.

Judgment for defendants.